UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFREY AUSTIN COOK,<br><br>                    Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:10-cv-05202-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for March 4, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL HISTORY

On July 11, 2008, plaintiff filed an application for disability insurance and another for SSI benefits, alleging disability as of January 10, 2008, due to posttraumatic stress disorder ("PTSD"), back problems and carpal tunnel syndrome. See Tr. 9, 131, 136, 155.  Both applications were denied upon initial review and on reconsideration. See Tr. 9, 78, 81, 86, 88.  A hearing was held before an administrative law judge ("ALJ") on April 13, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 23-73.

On June 26, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 9-22.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 27, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481.  On March 24, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #2.  The administrative record was filed with the Court on June 2, 2010. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred in evaluating the medical evidence in the record and in assessing her credibility.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences

REPORT AND RECOMMENDATION - 3

"logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 4

A.  PTSD diagnosis

Plaintiff argues the ALJ erred in failing to explain why he concluded more generally that plaintiff had an anxiety-related disorder, rather than the more specific diagnosis of PTSD.  It is true that the ALJ stated in the heading for the section of his decision discussing the severity of plaintiff's impairments,[1] that plaintiff had a "severe" impairment consisting of an anxiety-related disorder, while no mention of PTSD was made. See Tr. 11.  It is quite clear from the body of that section, though, that the ALJ found the record supported a more specific diagnosis of PTSD. See Tr. 11-13.  Throughout that section, the ALJ repeatedly notes the diagnosis of PTSD plaintiff has received (see id.), and at the end thereof, expressly concludes "the above listed impairments are both medically determinable and cause significant limitation to the performance of basic work activities" (Tr. 13).  Accordingly, the undersigned finds the ALJ did determine that plaintiff had PTSD, and even that it was a "severe" impairment. See Magallanes, 881 F.2d at 755, (court itself may draw specific and legitimate inferences from ALJ's opinion).

B.  Dr. Redmon

In his decision, the ALJ found in relevant part as follows:

The undersigned assigns significant weight to the opinion of Dr. [Marc] Redmon[, Psy.D.], who examined the claimant in March 2009 (Ex. 11F).  Dr. Redmon opined that the claimant was not significantly limited in [his] ability to make simple work-related decisions, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, and set realistic goads [sic] or plans independently of others (Ex. 11F, pp. 13-14).  The undersigned notes that Dr. Redmon opined that the claimant was markedly limited in ability to coordinate with or in proximity with others without being unduly distracted by them; however, this limitation

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the evaluation process ends. Id.  At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.

REPORT AND RECOMMENDATION - 5

>is adequately addressed in the residual functioning capacity by determining
>that the claimant is unable to deal with the general public as in a sales position
>or where the general public is frequently encountered as an essential element
>of the work process.

Tr. 18. Plaintiff argues that despite assigning significant weight to Dr. Redmon's opinion, the ALJ failed to explain why he reached conclusions regarding plaintiff's functional limitations that were inconsistent with those assessed by Dr. Redmon. The undersigned agrees.

Specifically, plaintiff argues the ALJ failed to explain why he did not adopt the following statement from Dr. Redmon:

>Until Mr. Cook has made more significant progress in treating his emotional
>conditions, he does not appear capable of achieving and maintaining stable,
>gainful employment at this time. He will likely require at least 6-12 months
>of treatment before he is fully able to return to work.

Tr. 415. Clearly this statement is inconsistent with the ALJ's determination that plaintiff could "**adequately perform the mental activities generally required by competitive remunerative work**." Tr. 14 (emphasis in original). Plaintiff also correctly notes the ALJ's finding that he is unable to work where dealing with the general public is frequently required, does not adequately address Dr. Redmon's opinion that he is markedly limited in his ability to coordinate with or in proximity to others without being unduly distracted by them. See Tr. 418. This is because the limitation assessed by Dr. Redmon logically would include co-workers and supervisors, and not just the public in general.

Also as noted by plaintiff, the ALJ found plaintiff had:

>**. . . the average ability to perform sustained work activities (i.e., maintain
>attention, concentration, persistence, and pace) in an ordinary work
>setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a
>week, or an equivalent work schedule) within customary tolerances of
>employers rules regarding sick leave and absence; and make judgments
>on simple work-related decisions, respond appropriately to supervisors
>and a few familiar co-workers, and deal with changes, all within a routine
>work setting. . . .**

REPORT AND RECOMMENDATION - 6

Tr. 14 (emphasis in original).  These findings, however, conflict as well with the opinion of Dr. Redmon that plaintiff was moderately limited (i.e. "may be able to perform [the] work-related function on a limited basis in a satisfactory manner, but . . . should not be placed in a job setting where [that] mental function is *critical* to job performance or to job purpose.") in the following functional abilities:

- ". . . maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)";

- ". . . perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances";

- ". . . complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number an length of rest periods"; and

- ". . . accept instructions and . . . respond appropriately to criticism from supervisors."

Tr. 417-18 (emphasis in original).  The ALJ erred in failing to explain why he did not adopt any of these limitations as well.

    C.    <u>Dr. Sullivan</u>

The ALJ further found in relevant part as follows:

> The undersigned considered the opinion of Dr. [James H.] Sullivan[, Ph.D.,] as stated in a fill-out form in May 2009 and assigns it little weight (Ex. 14F). Dr. Sullivan opined that the claimant had marked difficulties in maintaining social functioning and with concentration, persistence, and pace; with four or more episodes of decompensation and a GAF of 45 (Ex. 14F, p. 5).  The undersigned assigns little weight to Dr. Sullivan's opinion because they appear to be based primarily on the claimant's subjective complaints and the absence of supporting evaluation notes (e.g., results of a mental status examination).  Further, Dr. Sullivan only saw the claimant once during the relevant time period and so his opinions appear to be based on limited information (Ex. 14F, p. 3).  Further, Dr. Sullivan's opinion appear inconsistent with Dr. Redmon's opinion, which was made near the time of Dr. Sullivan's evaluation, that the claimant no longer was experiencing clinical

REPORT AND RECOMMENDATION - 7

levels of panic attacks (Ex. 11F, p. 9).

Tr. 19. Plaintiff argues Dr. Sullivan's findings – that he had marked difficulties in maintaining social functioning and in maintaining concentration, persistence and pace, and had four or more episodes of decompensation – indicate his mental impairments met the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06.[2] See also Tr. 13, 444-45. Plaintiff asserts, though, that the ALJ erred by ignoring Dr. Sullivan's findings here in his discussion of whether plaintiff had met Listing-level severity in regard to any of his impairments. See Tr. 13-14.

The undersigned agrees with plaintiff that the fact that Dr. Sullivan may have relied on his subjective complaints to one extent or another in forming his conclusions or that he saw him only one time during the relevant time period, are not alone sufficient and valid reasons for not adopting Dr. Sullivan's findings. As for the latter reason, the undersigned notes defendant often has based disability determinations on the opinions of examining physicians, which by definition are medical sources who see a claimant at most one or two times. As for the former reason, it is not at all clear that Dr. Sullivan based his conclusions primarily on the subjective complaints of plaintiff, as opposed to his own encounters with him. See Tr. 441-50. But for the same reason, it also is not at all clear, as pointed out by the ALJ, what the bases for those conclusions are, a fact

---

[2] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. An impairment will meet a listed impairment, however, "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2. Listings 12.04 and 12.06 consist "of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A ("There are additional functional criteria (paragraph C criteria) in . . . 12.04, and 12.06."). A listed impairment is met "if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." Id. As noted by the ALJ, "[t]o satisfy the 'paragraph B' criteria" for Listings 12.04 and 12.06, plaintiff's mental impairments "must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Tr. 13; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

REPORT AND RECOMMENDATION - 8

that the ALJ did not err in relying on to reject Dr. Sullivan's conclusions.

Specifically, the ALJ properly noted the "absence of supporting evaluation notes," such as the "results of a mental status examination," in rejecting those conclusions. Tr. 19. Plaintiff argues Dr. Sullivan's report indicates he based his conclusions on a clinical assessment of his impairments, but the point is an assessment must be supported by "clinical findings," none of which were included with Dr. Sullivan's report or, it appears, contained elsewhere in the record. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician, if it is inadequately supported by clinical findings); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. While it is true that "when mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology," none of the diagnoses made or limitations assessed by Dr. Sullivan in fact were substantiated by clinical observations connected to actual, recorded mental evaluation findings. Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (citation omitted); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting depression diagnosis is competent psychiatric evidence).

The undersigned does agree with plaintiff that the ALJ erred in rejecting Dr. Sullivan's conclusions on the basis that they were inconsistent with the opinion of Dr. Redmon that he was no longer experiencing panic attacks, since there is no evidence that Dr. Sullivan actually based his conclusions on the presence of such attacks. See Tr. 441-50. Nevertheless, as explained above, the ALJ properly rejected Dr. Sullivan's conclusions on the basis of the lack of clinical observations to support them, even though this last basis and the other two reasons the ALJ gave for not adopting them may have been erroneous.

REPORT AND RECOMMENDATION - 9

D. <u>Dr. Neims</u>

Plaintiff also challenges the ALJ's following findings:

> The undersigned assigns partial weight to Dr. [Dan] Neims[, Psy.D.]; specifically, the undersigned concurs with his opinion that the claimant was able to understand, remember, and follows simple and complex instructions (Ex. 8F, p. 6). However, the undersigned assigns little weight to Dr. Neim's [sic] opinion that the claimant has markedly impaired in ability to relate appropriately to co-workers, supervisors, and public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. The undersigned finds this particular opinion by Dr. Neim's [sic] as inconsistent with the record as there is no indication from the claimant's medical providers of significant problems with interacting with the claimant during examinations. For example, Dr. [Allison] Schechter[, Psy.D.,] noted that the claimant was cooperative throughout the encounter and maintained a positive doctor/patient relationship (Ex. 2F, p. 2). Dr. Redmon noted the claimant appeared friendly, polite, and cooperative (Ex. llF, p. 6).

Tr. 18-19. Plaintiff argues the ALJ erred in rejecting Dr. Neims' opinion regarding his ability to relate to others or respond appropriately to and tolerate normal work pressures and expectations, based on his interactions with his treatment providers. It is true that Dr. Schechter discovered no problems with plaintiff's social functioning (<u>see</u> Tr. 284, 286). On the other hand, although Dr. Redmon found plaintiff was "friendly, polite, cooperative, and forthcoming" upon mental status examination (Tr. 411), psychological testing indicated potential difficulties in interactions with others (<u>see</u> Tr. 414), and Dr. Redmon did assess him as moderately limited in several categories social of functioning. <u>See</u> Tr. 418-19. As noted above, furthermore, the ALJ erred in evaluating Dr. Redmon's conclusions. As such, it is not entirely clear the substantial medical evidence in the record supports the ALJ's rejection of the limitations assessed by Dr. Neims here, although the fact that Dr. Redmon found only moderate social limitations does warrant remand for further administrative proceedings, as opposed to an outright award of benefits.

E. <u>Carpal Tunnel Syndrome</u>

Plaintiff submitted for the first time to the Appeals Council an evaluation report dated

REPORT AND RECOMMENDATION - 10

May 6, 2009, from R. Barry Spinak, M.D., in which plaintiff was diagnosed with bilateral carpal tunnel syndrome. See Tr. 451-53. Dr. Spinak opined that with his "inability to perform any work with his hands, his diagnosis can no longer contain the term 'minor'," and that "[t]he effect of the condition on [his] usual occupation is that he is unable to perform any work with his hands." Tr. 453. Dr. Spinak based his opinion at least in part on physical examination findings showing joint function limitation, sensory and motor dysfunction and the difficulty plaintiff had with tying shoelaces and fastening buttons with both of his hands, although he could "pick up a piece of paper and tear it without difficulty." Tr. 452-53.

Plaintiff argues that this additional evidence warrants reversal for further consideration of his carpal tunnel syndrome, along with the evidence already contained in the record consisting of the other objective medical evidence establishing the presence of this condition, the testimony he gave regarding the limitations he experiences in the use of his hands, and a rating decision from the United States Department of Veterans Affairs ("VA") determining that he was 20% disabled and 10% disabled for minor and major carpal tunnel syndrome respectively. See Tr. 39-41, 323-24, 454-56. Plaintiff argues such reversal is warranted, because the ALJ's determination that he must avoid only those jobs "**requiring constant handling and fingering such as operation of keyboard or processing food products by hand (can use computer keyboard for 15 minutes and then needs to stop for 5 minutes before resuming)**" (Tr. 14 (emphasis in original)), is not well supported given the above additional evidence from Dr. Spinak.

While defendant argues the Court lacks jurisdiction to review the decision of the Appeals Council to deny plaintiff's request for review,[3] he does not challenge plaintiff's contention that the Court may consider additional evidence submitted for the first time to the Appeals Council in

---

[3] See Mathews v. Apfel, 239 F.3d 589, 594 (3rd Cir. 2001) (noting no statutory authority, source of district court's review authority, authorizes district court to review Appeals Council decisions to deny review).

REPORT AND RECOMMENDATION - 11

determining whether the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 168 F.3d 1449, 1451-52 (9th Cir. 1993); see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez to find that additional materials submitted to Appeals Council properly may be considered, because the Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (again citing to Ramirez in holding that evidence submitted to Appeals Council is part of record on review to federal court).

Defendant goes on to argue, however, that it is not clear from Dr. Spinak's report that he based his findings and conclusions on objective as opposed to subjective factors.  But the report Dr. Spinak provided contains a physical examination section in which it specifically was noted, as discussed above, that plaintiff had difficulty performing certain tasks with his hands.  As such, it does seem clear from those and the other physical examination findings contained therein, that the report contains at least some objective support for Dr. Spinak's conclusions, even if it is not entirely clear, as defendant asserts, the extent to which Dr. Spinak based his conclusions on objective factors.  Those conclusions, furthermore, call into question the limitations assessed by the ALJ, which clearly conflict with Dr. Spinak's statement regarding plaintiff's "inability to perform any work with his hands." Tr. 453.  This is especially the case given that, as discussed in greater detail below, the ALJ failed to provide sufficient valid reasons for discounting plaintiff's credibility regarding his subjective complaints.[4]

---

[4] Because plaintiff does not specifically challenge the ALJ's rejection of the disability determinations contained in the VA's rating decision (see Tr. 19), the undersigned declines to find those determinations support the argument that remand for further consideration of his carpal tunnel syndrome is warranted. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily

REPORT AND RECOMMENDATION - 12

II.  The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part for the following reason:

---

will not be considered).  As discussed above, though, Dr. Spinak's evaluation report, and the fact that the ALJ erred in discounting plaintiff's credibility, are sufficient for that purpose.

REPORT AND RECOMMENDATION - 13

> The undersigned finds that the claimant's alleged mental health symptoms are not substantiated by the record including a failure to establish a longitudinal record of sustained dysfunction due to the claimant's mental impairments. For example, the claimant testified that he had difficulty with concentration and completing tasks. However, Dr. Schechter, upon administration of the mental status examination, concluded that the claimant's concentration was good to fair with good persistence and pace within normal limits; the claimant was able to complete serial 7s and 3s without difficulty, complete calculations without difficulty, spell "world" forward, repeat five digits forward and four digits backward, and complete a three-step command without difficulty (Ex. 2F, p. 3).

Tr. 16. A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues, however, that the ALJ's reliance on Dr. Schechter's findings regarding concentration, persistence and pace here is misplaced, in light of the fact that the substantial objective medical evidence in the record does establish a history of mental impairment and limitation.

The undersigned agrees the ALJ erred in relying on Dr. Schechter's findings to discount plaintiff's credibility, given that Dr. Redmon did assess plaintiff with a number of moderate to marked limitations in the area of sustained concentration, persistence and pace (see Tr. 418), and, as discussed above, the ALJ erred in rejecting his report. Also as discussed above, there is other objective medical evidence in the record indicating the presence of significant mental functional limitations in terms, including the findings and conclusions of Dr. Neims, which again the ALJ erred in discounting. Thus, while there is evidence of less significant mental problems such as that provided by Dr. Schechter, and the ALJ did not err in rejecting the disability opinion of Dr. Sullivan, it remains unclear whether the record fully supports the ALJ here.

The ALJ also discounted plaintiff's credibility in part because plaintiff had "not generally received the type of medical treatment expected for the alleged disability," specifically finding in

REPORT AND RECOMMENDATION - 14

relevant part as follows:

> . . . For example, though the claimant did not seek treatment at the VA until May 2008 (last visit for physical examination at the VA was in March 2007) to establish primary care and receive treatment for his back pain, the claimant reportedly had already been using medical marijuana to treat his pain (Ex. IF, pp. 23-24). The claimant also reported previously taking Vicodin and Percocet for the pain, however, the records fail to indicate what provider prescribed those medications; the undersigned also notes that the records do indicate that the claimant obtained Vicodin and Percocet from his father (Ex. IF, p. 24). Further, although the claimant was treated for the allegedly disabling physical impairments, the records indicate that treatment has been essentially routine and/or conservative in nature. The records lack indication by providers recommending surgery nor indication of the need for additional updated x-rays of the claimant's spine since 2005, which were unremarkable (Ex. IF, p.8).

Tr. 16. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

   As pointed out by plaintiff, there is some evidence in the record that the medications he took and other treatment he received caused significant side effects, and that the conservative treatment he tried has failed at times. See Tr. 246, 263, 332, 339, 435, 440. However, there also is evidence to show otherwise, including some improvement in his symptoms. See Tr. 246, 267-68; 272, 283, 339, 349-50, 357, 415. The record, furthermore, shows plaintiff also has refused treatment or has opted for conservative treatment only at times. See Tr. 246, 263, 271, 339, 353, 391-92, 409, 415. Nevertheless, while it is the ALJ's sole responsibility to resolve conflicts and

REPORT AND RECOMMENDATION - 15

ambiguities in the evidence, given that the ALJ did not adequately address the impact of the treatment side effects plaintiff reported having or his reasons for seeking conservative treatment, again remand for further consideration of this issue is warranted.

Lastly, the ALJ discounted plaintiff's credibility in part for the following reasons:

> . . . the claimant engaged in activity that undermines the credibility of his allegations.  For example, the claimant testified that he had difficulty with lifting and picking up objects due to his back pain and carpal tunnel.  However, treatment notes from the VA dated September 2008 indicated that the claimant was engaged in physical activities involved with remodeling his house including moving 25 bags of concrete off the deck of his house (Ex. 10F, p. 5).  Also, the claimant alleged difficulty with his PTSD symptoms when in crowded public areas and resulting difficulty with utilizing public transportation.  However, the claimant testified to riding the ferry on a monthly basis to purchase his medicinal marijuana from a co-op in Seattle.  Furthermore, the claimant alleged during the hearing that he had difficulty with activities of daily living; however, he reported to Dr. Schechter that he was able to care for his dogs, go camping, and tend to his vegetable garden (Ex. 2F, p. 4).  Treatment notes from September 2008 indicated that the claimant reported that he had been "mostly camping and enjoying the outdoors . . . it was a good summer" (Ex. 5F, p. 20).  Also, the claimant reported using braces on his hands due to the carpel tunnel pain, however, there is no indication in the records showing that the braces were prescribed.

Tr. 16-17.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities.  Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the activities noted by the ALJ do not rise to the level needed to discount his credibility.  While the undersigned does find the record fails to show plaintiff has engaged in household chores for a substantial part of the day or in other activities necessarily transferrable to a work setting, as noted above, the ALJ also may consider "ordinary techniques of credibility

REPORT AND RECOMMENDATION - 16

evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  Plaintiff argues the ALJ could not rely on his self-report regarding moving 25 bags of concrete, because there is no indication how long the activity lasted or how heavy the bags were.  But the undersigned finds it was reasonable for the ALJ to find the ability to pick up 25 pounds of concrete – usually not a light substance even if the bags are small – was inconsistent with plaintiff's alleged difficulties in being able to pick up and lift objects in general.  Plaintiff's comments that he had "a good summer" spending his time "mostly camping and enjoying the outdoors" also is strongly indicative of an ability to engage in physical activity at a level much higher than has been claimed over a fairly significant period of time. See Tr. 329.

Accordingly, the undersigned finds the ALJ provided at least one valid reason for finding plaintiff to be not fully credible regarding his subjective complaints.  It is true that the fact that some of the stated reasons for discounting plaintiff's credibility may have been improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall. Tonapetyan, 242 F.3d at 1148.  Such is not the case here, however, as most of the reasons the ALJ provided were neither clear nor convincing.  On the other hand, also as discussed above, issues remain regarding plaintiff's credibility that need to be resolved by defendant on remand.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

REPORT AND RECOMMENDATION - 17

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to the medical evidence in the record, as well as plaintiff's credibility, it is unclear whether the ALJ properly determined plaintiff was capable of performing other jobs existing in significant numbers in the national economy, and thus whether he properly determined plaintiff to be disabled.  For those reasons, remand for further consideration of these issues by defendant is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

REPORT AND RECOMMENDATION - 18

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 4, 2011**, as noted in the caption.

DATED this 11th day of February, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19